■ Joseph Lipari, Respondent-Appellant, v AT Spring, LLC, et al., Respondents. AT Spring, LLC, et al., Third-Party Plaintiffs-Respondents, v Imperial Woodworking Company, Third-Party Defendant-Appellant-Respondent. [938 NYS2d 303]—

The tenant, Longchamp Soho LLC, retained Shawmut as the construction manager/general contractor to renovate the premises for use as a retail store with office space. Shawmut subcontracted with Imperial to furnish and install the interior woodwork. Imperial subcontracted with nonparty Wood Pro Installers, Inc., which employed plaintiff, who was injured while installing decorative wooden beams and panels that were suspended from a permanent second-floor ceiling.

At his examination before trial, plaintiff testified that he was trying to close the seam between two beams with a clamp. He asked his foreman for a Bakers Scaffold, but was told that the scaffolds were in use and that he should use an eight foot A-frame ladder, which plaintiff placed against a wall in a closed position because that was the only way he could use it to reach the area where the seam was located. While turning the clamp, the ladder, which was not held or secured in any way, moved. Plaintiff tried to grab onto the ceiling, but fell sideways with the ladder. A coworker, Frank Higgins, witnessed the accident

and submitted an affidavit which corroborated that plaintiff fell when the ladder slid to the side. Plaintiff's partner on the job, Roy Ramski, testified at his examination before trial that the unsecured ladder had to be used in the closed position due to spatial limitations. He further testified that he was working in the loft area above the dropped ceiling while plaintiff was working on the ladder.

Shawmut's assistant superintendent, David Margulies, drafted an incident report, based on his conversations with plaintiff and other workers, which stated that plaintiff was climbing the ladder to access the cavity between the upper ceiling and the dropped ceiling when he leaned on a section of Masonite that cantilevered approximately four inches over the solid surface. The Masonite did not hold plaintiff, and he lost his balance and fell to the floor. In an Accident Report and Treatment Form, prepared 9 to 10 days after the accident, plaintiff stated: "Fell off ladder about five feet high from floor. Masonite was placed by someone else on top of c[ei]ling I was working off and over hanged the [ceiling.] I put my hand on it and lost balance and fell."

Margulies did not witness the accident and did not take contemporaneous notes when he interviewed the witnesses. Although he observed the ladder in the upright position when he arrived at the scene, he did not know if it was open when plaintiff fell or whether the ladder had toppled over. Ramski testified that after hearing a loud thump, he climbed down the ladder and saw plaintiff lying on the floor, with plywood nearby.

Plaintiff's foreman, James Caufield, testified at his examination before trial that plaintiff told him that he was on an unsecured Masonite panel in the loft area of the ceiling, which shifted so that it hung 16-18 inches over the wall. As plaintiff reached out to get onto the ladder, the Masonite gave way and plaintiff fell. Caufield did not recall being asked by plaintiff for a scaffold and testified that even if the request had been made, there would not have been enough room to use one.

Plaintiff is entitled to summary judgment as to liability on his Labor Law § 240 (1) claim. The statute was enacted to protect workers in construction projects against injury from the expected risks of inherently hazardous work posed by elevation differentials at the work site (*see Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 490-491 [1995]; *Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 267 [2007], *lv denied* 10 NY3d 710 [2008]) and requires property owners and contractors to furnish or cause to be furnished safety devices, such as ladders and scaffolds, which are "so constructed, placed and operated as

to give proper protection" to construction workers (Labor Law § 240 [1]; *see also Klein v City of New York*, 89 NY2d 833, 834-835 [1996]). Although there are different versions of how plaintiff was injured, the accident occurred because plaintiff was not given proper protection to prevent his fall (*see Nascimento v Bridgehampton Constr. Corp.*, 86 AD3d 189, 190-191 [2011]). A Labor Law § 240 (1) violation proximately caused the accident whether plaintiff's fall was caused by an unsecured A-frame ladder that slipped (*see Siegel v RRG Fort Greene, Inc.*, 68 AD3d 675 [2009]; *Picano v Rockefeller Ctr. N., Inc.*, 68 AD3d 425 [2009]) or an unsecured Masonite-covered office ceiling, used as an elevated work platform, that shifted (*see Figueiredo v New Palace Painters Supply Co. Inc.*, 39 AD3d 363 [2007]; *Becerra v City of New York*, 261 AD2d 188, 190 [1999]), or whether it happened because plaintiff lost his balance when the unsecured Masonite gave way when he leaned on it as he climbed the unsecured ladder (*see Vukovich v 1345 Fee, LLC*, 61 AD3d 533 [2009]; *Orellano v 29 E. 37th St. Realty Corp.*, 292 AD2d 289, 290-291 [2002]; *Yu Xiu Deng v A.J. Contr. Co.*, 255 AD2d 202 [1998]). This is not a case where plaintiff simply lost his balance and fell from a secured ladder.

Defendants' submissions did not suffice to raise a fact question as to whether plaintiff's own acts or omissions were the sole cause of the accident (*see Gallagher v New York Post*, 14 NY3d 83, 88-89 [2010]; *Auriemma v Biltmore Theatre, LLC*, 82 AD3d 1, 9-12 [2011]; *Cevallos v Morning Dun Realty, Corp.*, 78 AD3d 547, 548 [2010]).

As there is no evidence that the owners or the lessee of the property either supervised or controlled plaintiff's work or had notice of any alleged dangerous condition at the work site, the Labor Law § 200 and common-law negligence claims should be dismissed as against them (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]; *Vasquez v Urbahn Assoc. Inc.*, 79 AD3d 493, 495 [2010]). However, a triable issue of fact exists whether it was Shawmut that created the condition that allegedly caused or contributed to plaintiff's fall.

The subcontract between Shawmut and Imperial provides for indemnification by the latter from "any and all claims . . . arising out of or resulting from any work of and caused . . . by any negligent act or omission of Subcontractor or those employed by it or working under those employed by it at any level." In light of "the language and purpose of the entire agreement and the surrounding facts and circumstances," this provision clearly includes claims caused by the negligence of Imperial's sub-subcontractor, Wood Pro (*see Hooper Assoc. v AGS Computers*,

74 NY2d 487, 491-492 [1989]). Thus, the claim for contractual indemnification against Imperial should not be dismissed. Concur—Mazzarelli, J.P., Andrias, Saxe, Freedman and Román, JJ. **[Prior Case History: 2011 NY Slip Op 30004(U).]**