■ MARK A. ARAMBURU et al., Respondents, v MIDTOWN WEST B, LLC, et al., Appellants-Respondents. MIDTOWN WEST B, LLC, et al., Third-Party Plaintiffs-Appellants-Respondents, v FIVE STAR ELECTRIC CORP., Third-Party Defendant-Respondent-Appellant. [6 NYS3d 227]—

Order, Supreme Court, New York County (Anil C. Singh, J.), entered October 31, 2013, which, insofar as appealed from as limited by the briefs, granted plaintiffs' motion for partial summary judgment on the issue of liability pursuant to Labor Law § 240 (1), denied defendants' motion for summary judgment dismissing plaintiffs' common-law negligence and Labor Law § 200 claims, denied defendants' motion for summary judgment on their contractual indemnification claim against third-party defendant Five Star Electric Corp. (Five Star), and denied Five

Star's motion for summary judgment dismissing defendants' third-party complaint against it, unanimously modified, on the law, to conditionally grant defendants' motion for summary judgment on their contractual indemnification claim against Five Star, and to grant Five Star's motion for summary judgment dismissing defendants' claims for breach of contract and common-law indemnification and contribution, and otherwise affirmed, without costs.

The court properly granted partial summary judgment in favor of plaintiffs' Labor Law § 240 (1) claim. According to the injured plaintiff's testimony, he and a coworker were allegedly each using both hands to guide a heavy reel of wire covered in cardboard down a plywood ramp with an incline starting at four feet. Plaintiff slowly walked backwards in front of the reel, while his coworker slowly walked forwards behind it. Plaintiff slipped and fell on a two-foot circular patch of ice on the ramp, landing on the ramp, causing his coworker to lose control of the reel, which consequently rolled over plaintiff's shoulder and neck. By submitting this undisputed account, plaintiff established that his accident was a "direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]). Plaintiff also met his burden to "establish that there is a safety device of the kind enumerated in section 240 (1) that could have prevented his fall" (*Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 340 [2011]), by pointing to the abundant evidence that no such devices, including pulleys or ropes, were used (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 523 [1985]). "Rather than using plaintiff [and his coworker] as the securing device contemplated by the statute, he should have been provided with one instead" (*Luongo v City of New York*, 72 AD3d 609, 611 [1st Dept 2010]). The fact that plaintiff's injuries resulted in part from slipping on ice on the ramp on which he was working does not preclude summary judgment in favor of his Labor Law § 240 (1) claim, since his injuries were also proximately caused by the lack of any safety devices to prevent him from being struck by heavy equipment falling from a significant elevation above him (*see Gove v Pavarini McGovern, LLC*, 110 AD3d 601 [1st Dept 2013]). Contrary to defendants' argument, their witnesses' testimony that safety devices were neither used nor required to be used to perform plaintiff's task is irrelevant to defendants' liability pursuant to Labor Law § 240 (1), since the statute imposes an "unvarying standard" independent of any "external considerations such as . . . custom and usage" (*Zimmer*, 65 NY2d at

523). The conflicting testimony as to whether the reel weighed about 200 to 300 pounds or about 1,000 pounds does not raise a triable issue of fact, since plaintiff is entitled to partial summary judgment in either event.

The court properly declined to dismiss plaintiffs' common-law negligence and Labor Law § 200 claims. It is also undisputed that defendants Midtown West B GC, LLC, doing business as Rockrose GC MWB, LLC, Rockrose Construction Corp., and Rockrose Construction Projects, LLC (collectively, Rockrose) were responsible for maintaining the ramps. Defendants failed to meet their initial burden to demonstrate an absence of material issues of fact as to whether they had notice of the icy condition which caused plaintiff's accident, since they failed to present evidence of any cleaning or maintenance schedule with respect to the ramps. In any event, there are triable issues of fact as to whether defendants had notice of a recurring hazardous condition which went routinely unaddressed (*see Gomez v National Ctr. for Disability Servs.*, 306 AD2d 103 [1st Dept 2003]). The minutes of Five Star's safety meetings, which were regularly provided to Rockrose, showed that slippery ice on ramps was repeatedly raised as a hazard for two months leading up to the accident. Although Rockrose's foreman stated that Rockrose used salt and calcium chloride as de-icing agents, he stated that they were used only when it was necessary to shovel snow, not in conditions of lighter snow or rain. The foreman's testimony to the effect that he had no notice of recurring ice on ramps merely raises a question of fact, in light of his testimony that Rockrose conducted regular walk-throughs of the site (*see Picaso v 345 E. 73 Owners Corp.*, 101 AD3d 511, 512 [1st Dept 2012]).

The indemnity provision of the subcontract between Rockrose and Five Star requires the latter to indemnify defendants for, among other things, any liability, damages, claims, or losses "which arise out of or are connected with, or are claimed to arise out of or be connected with, the performance of the Work," except insofar as resulting from defendants' own negligence. This broad provision was triggered by this action, in which plaintiff, a Five Star employee, seeks damages for injuries he sustained while performing Five Star's work (*see Fuger v Amsterdam House for Continuing Care Retirement Community, Inc.*, 117 AD3d 649, 650 [1st Dept 2014]). However, summary judgment on the contractual indemnification claim must be granted conditionally rather than unconditionally, in light of the pending issues of fact as to defendants' negligence (*see id.*). It does not avail Five Star to argue that Rockrose was solely

responsible for the cleaning and maintenance of the ramps; "the accident could not have been caused solely by [defendants'] negligence, because it was caused at least in part by [defendants'] violation of Labor Law § 240 (1), which imposes absolute liability" (*see id.* at 650-651).

The court should have granted Five Star's motion for summary judgment dismissing defendants' claim seeking common-law indemnification and contribution from Five Star. Five Star met its initial burden to establish that plaintiff did not sustain a grave injury within the meaning of Workers' Compensation Law § 11, and defendants failed to raise an issue of fact as to whether plaintiff's brain injury constituted a grave injury. Although experts who examined plaintiff averred that the accident had caused various brain conditions including seizures, persistent headaches, and depression, defendants have not shown that plaintiff "is no longer employable in any capacity" (*Rubeis v Aqua Club, Inc.*, 3 NY3d 408, 413 [2004]).

As defendants do not dispute, the court should have granted Five Star's motion for summary judgment dismissing defendants' breach of contract claim against it. Five Star met its initial burden by presenting evidence that it had satisfied the provision of its subcontract with Rockrose requiring Five Star to procure insurance for defendants. Defendants failed to raise an issue of fact. The court improperly denied the motion based on correspondence between the insurance carriers of defendants and Five Star concerning this action, which is irrelevant to whether Five Star purchased the required policy. Concur— Mazzarelli, J.P., Andrias, Saxe, Feinman and Clark, JJ.