[42 NYS3d 164]

Glen Landi et al., Respondents, v SDS William Street, LLC, et al., Appellants.

First Department, December 13, 2016

## APPEARANCES OF COUNSEL

*Shaub, Ahmuty, Citrin & Spratt LLP*, Lake Success (*Christopher Simone* and *Jonathan P. Shaub* of counsel), for appellants.

*Fortunato & Fortunato, PLLC*, Brooklyn (*Louis A. Badolato* and *Annamarie Fortunato* of counsel), for respondents.

### OPINION OF THE COURT

SAXE, J.

This appeal concerns whether Labor Law § 240 (1) applies where a heavy pallet jack being maneuvered down a ramp ran over the foot of the worker controlling it, after water on the ramp left him unable to control its descent.

Plaintiff, Glen Landi, who was employed on a construction project site at 15 William Street in Manhattan, was injured in an accident that occurred at the site. Plaintiff explained in his deposition testimony that his employer, Mastercraft, was responsible for erecting interior walls in the three basement levels of the building, designated C1, C2, and C3. A concrete ramp led from street level down to each basement level;

plaintiff said the ramp from each level to the next measured about 30 feet long and 20 feet wide. To transport materials from delivery trucks on the street down to the three basement levels, plaintiff was required to use a motorized "pallet jack," an approximately 2,500-pound, 4-foot-wide device capable of lifting and carrying a load of 6,000 pounds. The jack had three wheels: two large wheels, one under each of the jack's two forks, and a third, smaller wheel under the steering handle.

To move the jack, plaintiff had to grasp its steering handle and angle it downward from its initial upright position, and then hold down a button on the handle. The jack would stop moving when he removed his finger from the button or lifted the handle back to the upright position. Plaintiff had been trained to stand directly in front of the jack, with the forks sticking out behind, when maneuvering a load down a ramp, since the load could fall off the jack if the forks were facing the front.

On the date of his accident, May 31, 2007, plaintiff was assigned to transport cinder blocks from street level to level C3. The blocks were packaged on individual skids, and each skid contained slots into which the forks of the jack were inserted. Plaintiff loaded two skids of cinder blocks, which weighed about 3,000 pounds, onto the jack. On his first trip to C3, plaintiff noticed water running down the ramp between the ground floor and C1, which seemed to be caused by "core drilling" being done to create a space for a pipe. On subsequent trips to the basement that day, plaintiff saw that water was building up and accumulating on the ramp between the ground floor and C1, and then between C1 and C2. On his fifth trip to the basement, plaintiff felt his footing worsen, and the jack started sliding a little although it did not seem out of control. Although the jack seemed to be "turning by itself," plaintiff still managed to stop it effectively and guide it down the ramp in a "nice and easy" manner. On perhaps his sixth or eighth trip down to the basement level, plaintiff once again began to descend the ramp in front of the jack, with the forks and load facing upward, but this time, while descending the ramp between C1 and C2, about five feet below C1, "the jack started picking up speed on its own." The jack accelerated, and although plaintiff lifted the handle in an attempt to stop it, the jack kept sliding down. Although plaintiff tried to get out of its way, he was prevented by the debris and materials on the side of the ramp, which he did not have time to pick his way through. At that point, the

front wheel of the jack ran over his right foot. In his affidavit, plaintiff stated that by looking at photographs taken after the accident, he was able to recognize that the weight of the load caused the jack to tip and to "hydroplane," and the load struck a wall.

Plaintiff said he had never been instructed not to use the jack on wet surfaces, and had previously used one outside in the rain, and on snow and ice, without incident.

Plaintiffs moved for partial summary judgment on the injured plaintiff's Labor Law §§ 240 (1) and 241 (6) claims, and defendants moved for summary judgment dismissing those claims. The motion court granted plaintiffs' motion for partial summary judgment against defendants on the Labor Law § 240 (1) claim, and denied defendants' motion for summary judgment dismissing the Labor Law §§ 240 (1) and 241 (6) claims, and defendants appeal.* We now affirm.

Plaintiff relies primarily on *Aramburu v Midtown W. B, LLC* (126 AD3d 498 [1st Dept 2015]), in support of his motion for partial summary judgment on his Labor Law § 240 (1) claim; defendants counter that this case is controlled by *Nicometi v Vineyards of Fredonia, LLC* (25 NY3d 90 [2015]), which was issued after our *Aramburu* decision.

In *Aramburu*, the plaintiff and a coworker were guiding a heavy reel of wire down a plywood ramp, when the plaintiff, who was walking backwards in front of the reel, slipped and fell on a patch of ice on the ramp, at which time the reel rolled over his shoulder and neck (*id.* at 499). This Court held that the plaintiff was entitled to partial summary judgment on the issue of liability on his Labor Law § 240 (1) claim (*id.*). We rejected the defendant's suggestion that the plaintiff's injuries resulted from slipping on ice, rather than from any elevation-related risk, explaining that the plaintiff's accident was *also* proximately caused by the lack of any safety devices, such as a pulley, to prevent the heavy equipment from being pulled downward due to gravity caused by the significant elevation differential (*id.*, citing *Gove v Pavarini McGovern, LLC*, 110 AD3d 601 [1st Dept 2013]).

The Court of Appeals' decision in *Nicometi v Vineyards of Fredonia, LLC* (25 NY3d 90 [2015]), issued shortly after this Court's *Aramburu* decision, does not preclude Labor Law

* The dismissal of the complaint as against Rael Automatic Sprinkler Co. Inc. is not at issue on appeal.

§ 240 (1) liability here, or even contradict *Aramburu*'s ruling. In *Nicometi*, the plaintiff was standing on stilts to install insulation in a construction site ceiling when he slipped on a patch of ice (*id.* at 94). The Court explained that the plaintiff slipped and fell due solely to the hazardous icy condition, unrelated to his elevated position on stilts, so Labor Law § 240 (1) did not apply (*id.* at 96). In applying the rule of a similar, previous case, *Melber v 6333 Main St.* (91 NY2d 759 [1998]), the Court pointed to the line in *Melber* stating that "[t]he protective equipment envisioned by [Labor Law § 240 (1)] is simply not designed to avert the hazard plaintiff encountered here," namely electrical conduit protruding from the unfinished floor (25 NY3d at 98, quoting *Melber*, 91 NY2d at 763). Stating *Nicometi*'s conclusion another way, the plaintiff's elevation did not proximately cause his slip and fall; it simply contributed to the distance he fell. Although the plaintiff's elevation at the time he slipped and fell may arguably have contributed to the severity of his injuries, it did not cause his slipping and falling. Here, contrary to defendants' contention, plaintiff's accident was not due solely to a hydroplaning piece of equipment; it was due to the slide down a slope of a heavy piece of hydroplaning equipment whose traction and braking mechanism were not up to the task.

Consideration of *Runner v New York Stock Exch., Inc.* (13 NY3d 599 [2009]) may also help answer why Labor Law § 240 (1) applies although plaintiff was not struck by an object being hoisted or secured. In *Runner*, the plaintiff and his coworkers were assigned to move an 800-pound reel of wire down some stairs, and were instructed to attempt to control its descent by tying a 10-foot rope to the reel, wrapping the rope around a metal bar placed horizontally across a door jamb, and having the other end of the rope held by the plaintiff and his coworkers, putting the plaintiff and his coworkers in the position of counterweights (*id.* at 602). Rather than this makeshift counterweight system controlling the descent of the reel down the stairs, instead, the reel's descent caused the rope to pull the plaintiff uncontrollably into the metal bar, causing injury to his hands (*id.*). Rejecting the analysis suggested by the *Runner* defendants, namely, that Labor Law § 240 (1) applies only where workers fall or objects fall on them, the Court explained that "the single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*id.* at 603).

Plaintiff's testimony here established that his accident was proximately caused by the combination of the traction-reducing water condition and the slope, which caused the heavy, loaded pallet jack to slide downhill while the breaking mechanism was rendered useless. The jack, with its built-in braking mechanism, failed to provide him adequate protection against the gravity-related risk inherent in transporting the heavy load down the water-covered ramp. Therefore, defendants failed "to provide adequate protection against" the risk that was created in part by the " 'significant elevation differential' " of the ramp (*Aramburu* at 499, quoting *Runner*, 13 NY3d at 603).

It does not avail defendants to argue that there was no safety device that could have been provided by defendants. The jack itself *was* a safety device (*see Guanopatin v Flushing Acquisition Holdings, LLC*, 127 AD3d 812 [2d Dept 2015]), but it proved insufficient to protect plaintiff from circumstances where he had to move a heavy load down a ramp when that ramp was covered with water, which rendered the process more hazardous. Nor can the height differential be said to be de minimis; in that respect, this case is comparable to *Marrero v 2075 Holding Co. LLC* (106 AD3d 408, 409 [1st Dept 2013]), where two 500-pound steel beams fell from the top of an A-frame cart that tipped over, and the steel beams landed on the plaintiff's calf and ankle, and this Court held that "[g]iven the beams' total weight of 1,000 pounds and the force they were able to generate during their descent, the height differential was not de minimis."

Finally, any inconsistencies or doubtful details in plaintiff's accounts of the accident do not raise triable issues of fact, since plaintiff is entitled to partial summary judgment in any event (*see Aramburu*, 126 AD3d at 500; *Nerney v 1 World Trade Ctr. LLC*, 140 AD3d 459, 460 [1st Dept 2016] [experts' suggestions that the accident could not have occurred as the plaintiff testified did not prevent summary judgment to the plaintiff, in light of the lack of needed safety devices]; *Lipari v AT Spring, LLC*, 92 AD3d 502, 504 [1st Dept 2012] ["Although there are different versions of how plaintiff was injured, the accident occurred because plaintiff was not given proper protection to prevent his fall"]).

In light of the foregoing, the Labor Law § 241 (6) claim need not be addressed (*see e.g. DaSilva v Everest Scaffolding, Inc.*, 136 AD3d 423, 424 [1st Dept 2016]).

Accordingly, the orders of the Supreme Court, Bronx County (Norma Ruiz, J.), entered December 14 and December 17, 2015, which, insofar as appealed from as limited by the briefs, granted plaintiffs' motion for partial summary judgment on the Labor Law § 240 (1) claim as against defendants SDS William Street, LLC, 15 William Street, LLC, Bovis Lend Lease, Inc., Bovis Lend Lease LMB, Inc., and Liberty Mechanical Contractors, LLC, and denied those defendants' motion for summary judgment dismissing the Labor Law §§ 240 (1) and 241 (6) claims as against them, should be affirmed, without costs.

FRIEDMAN, J.P., RICHTER, GISCHE and KAPNICK, JJ., concur.

Orders, Supreme Court, Bronx County, entered December 14, 2015 and December 17, 2015, affirmed, without costs.