Macias v Mercer Sq. LLC (2024 NY Slip Op 51651(U))

[*1]

Macias v Mercer Sq. LLC

2024 NY Slip Op 51651(U)

Decided on December 9, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 9, 2024
Supreme Court, Kings County

Gerardo G. Macias, Plaintiff,

against
Mercer Square LLC, MADISON MANAGEMENT LLC, DOUGLAS ELLIMAN PROPERTY MANAGEMENT, MERCER SQUARE OWNERS CORP., PHILIP ANDREWS LLC, and DJM NYC, LLC, Defendants.
DOUGLAS ELLIMAN PROPERTY MANAGEMENT, MERCER SQUARE OWNERS CORP., Third-Party Plaintiffs,
against
DJM NYC, LLC, Third-Party Defendant. 
DJM NYC, LLC, Second Third-Party Plaintiff,
against
NEW YORK INSULATION, INC., Second Third-Party Defendant.

Index No. 502856/2019

Wingate Russotti Shapiro Moses & Halperin LLP, New York City & The Law Office of Michael James Prisco PLLC, Massapequa (Michael James Prisco of counsel), for plaintiff Gerardo G. Macias.
Lewis Johs Avallone Aviles, LLP, Islandia (Aimee D. Drexler of counsel), for defendants/third-party plaintiffs Douglas Elliman Property Management & Mercer Square Owners Corp.
Kahana & Feld LLP, New York City (Emma Schwab of counsel), for defendant/third-party defendant/second third-party plaintiff DJM NYC, LLC.
Fullerton Beck LLP, White Plains (Susan Scaria of counsel), for second third-party defendant New York Insulation, Inc.

Aaron D. Maslow, J.

The following papers efiled on NYSCEF were used on these motions:
Motion Sequence No. 5
In support: Doc Nos. 100-125
In opposition: Doc Nos. 127-133
In reply: Doc No. 183
Motion Sequence No. 6
In support: Doc Nos. 145-154
In opposition: Doc Nos. 171-176, 187-189
In reply: Doc Nos. 177, 198
Motion Sequence No. 7
In support: Doc Nos. 155-168
In opposition: Doc Nos. 169-170, 196-197
In reply: Doc Nos. 178-179, 199
Additional
Doc No. 69: Second third-party notice, summons, and complaint
Doc No. 86: Second third-party answer.
Upon the foregoing papers, having heard oral argument [FN1]
, and due deliberation having been had, the within motions are determined as follows.
Background
In this action, plaintiff Gerardo G. Macias alleges personal injuries resulting from a worksite accident at 250 Mercer Street, in Manhattan, on November 2, 2018. The accident occurred when he and four co-workers endeavored to lift and store a fifteen-foot extension ladder from the sidewalk and onto hooks located overhead under a sidewalk bridge. (When the work shift ended, they would store the [*2]ladder under the sidewalk bridge in a manner so that it would not fall on pedestrians underneath.) According to plaintiff, he, "in conjunction with a fellow worker, first elevated the ladder above their heads. Subsequently, this ladder was handed off to two additional workers, who were positioned several feet up the side of the sidewalk bridge. These workers, in turn, proceeded to pass the ladder upwards to yet another individual stationed at an even higher level to hook the ladder in place. During this process, the ladder became loose and fell down several feet into Plaintiff's face."[FN2]
 (NYSCEF Doc No. 158 (pl mem law ¶ 2.) Plaintiff said that the ladder fell ten feet (see NYSCEF Doc No. 162, pl EBT at 27).
Defendant Mercer Square Owners Corp. ("Mercer Corp.") owned the subject property. Defendant Douglas Elliman Property Management ("Douglas Elliman") was the managing agent. (See NYSCEF Doc No. 161, primary contract.) Mercer Corp., through Douglas Elliman, retained defendant/third-party defendant/second third-party plaintiff DJM NYC, LLC ("DJM") to serve as the general contractor for a lead removal and masonry restoration project (see id.). In turn, DJM hired second third-party defendant subcontractor New York Insulation, Inc. ("NYI") to remove the lead-containing materials (see NYSCEF Doc No. 165, Williams EBT at 40, 53-54).[FN3]

In Motion Sequence No. 7, Plaintiff moves for summary judgment in its favor on the issue of liability under Labor Law § 240 (1). In Motion Sequence No. 6, defendants/third-party plaintiffs Douglas Elliman and Mercer Corp. move for summary judgment in their favor dismissing plaintiff's causes of action alleging common law negligence and a Labor Law § 200 claim and granting them judgment over and against third-party defendant DJM based on contractual indemnity. In Motion Sequence No. 5, second third-party defendant New York Insulation, Inc. moves for summary judgment dismissing the second third-party complaint by DJM against it.
Motion Sequence No. 7:
Plaintiff's Motion for Summary Judgment on Labor Law § 240 (1) Claim
Plaintiff argues that he is entitled to summary judgment on liability on his Labor Law § 240 (1) claim on the grounds that the ladder required securing, and defendants purportedly failed to provide any safety device enumerated in Labor Law 240 (1) to protect him or secure the ladder (see NYSCEF Doc No. 158, pl mem law). 
Labor Law § 240 (1) provides:
All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.
It is well-settled that Labor Law 240 (1) imposes absolute liability on owners and contractors who fail to provide or erect safety devices necessary to give proper protection to workers exposed to elevation-[*3]related hazards (see Mentesana v Bernard Janowitz Constr. Corp., 44 AD3d 721, 723 [2d Dept 2007]; Bonilla v State of New York, 40 AD3d 673, 674 [2d Dept 2007]).
Notably, Labor Law 240 (1) applies equally to owners, contractors and their agents irrespective of whether they supervise or control the work at issue (see Barreto v Metropolitan Transp. Auth., 25 NY3d 426, 433 [2015]). To achieve the legislative purpose of Labor Law 240 (1) to protect workers, the owners, contractors, and their agents bear the ultimate responsibility for safety practices, rather than workers who are deemed to be scarcely in a position to protect themselves from accidents (see Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520 [1985]). 
To prevail on a Labor Law § 240 (1) cause of action, a plaintiff must establish that the statute was violated and that the violation proximately caused his or her injuries (see Rivas v Purvis Holdings, LLC, 222 AD3d 676, 677 [2d Dept 2023]; Orellana v 7 West 34th Street, LLC, 173 AD3d 886, 887 [2d Dept 2019]).
Significantly, Labor Law § 240 (1) claim applies to both so-called "falling worker" and "falling object" situations and, in a "falling object" case, a plaintiff proves a violation of Labor Law 240 (1) by establishing (1) that, at the time the object fell, it was being hoisted or secured or that the falling object required securing for the purpose of the undertaking and (2) the object fell because of the absence or inadequacy of a safety device of the kind enumerated in the statute (see Castano v Algonquin Gas Transmission, LLC, 213 AD3d 905, 907 [2d Dept 2023]). 
Insofar as Labor Law § 240 (1) places the onus of worksite safety on the owner and general contractor, a plaintiff is under no obligation to affirmatively request an adequate safety device or safer methods to perform the assigned work (see Orellana v 7 W. 34th St., LLC, 173 AD3d at 888).
On a motion for summary judgment on liability under Labor Law § 240 (1), once the plaintiff makes a prima facie showing, the burden then shifts to the defendant, who may defeat plaintiff's motion only if there is a plausible view of the evidence — enough to raise a fact question — that there was no statutory violation and that plaintiff's own acts or omissions were the sole cause of the accident (see Cevallos v WBB Constr., Inc., 227 AD3d 657, 658 [2d Dept 2024]; Masmalaj v New York City Economic Dev. Corp., 197 AD3d 1292, 1293 [2d Dept 2021]).
Plaintiff established prima facie that at the time the ladder fell, it was being hoisted above him, the ladder required securing for the purpose of the undertaking, and the ladder fell because of the absence or inadequacy of a safety device of the kind enumerated in Labor Law § 240 (1) (see Castano v Algonquin Gas Transmission, LLC, 213 AD3d at 907). The burden shifted to defendants to show that a material issue of fact existed as to there being a statutory violation (see Cevallos v WBB Constr., Inc., 227 AD3d at 658; Masmalaj v New York City Economic Dev. Corp., 197 AD3d at 1293).
It is undisputed that in the course of raising the ladder, it fell on plaintiff. Defendants Mercer Corp. and Douglas Elliman argue that Douglas Elliman, as the managing agent, is not liable as an agent ("statutory agent") under Labor Law § 240 (1), and that the provisions of Labor Law § 240 (1) do not apply because the ladder fell only a de minimis distance (see NYSCEF Doc No 169, Drexler aff).
In order to hold a statutory agent liable under Labor Law § 240 (1), it must have the authority to direct, supervise, and control the injury-producing work (see Russin v Louis N. Picciano & Son, 54 NY2d 311 [1981]; Depass v Mercer Square, LLC, 219 AD3d 801 [2d Dept 2023]; Reyes v Bruckner Plaza Shopping Center, LLC, 173 AD3d 570 [1st Dept 2019]; Burgund v Cushman & Wakefield, Inc., 167 AD3d 441 [1st Dept 2018]); cf. Corona v Metropolitan 298-308 Assoc., 281 AD2d 447 [2d Dept 2001]). Based on the record evidence, it is evident that Douglas Elliman did not have the authority to direct, supervise, and control the work that plaintiff engaged in. The Court does not read the main contract as providing for such authority (see NYSCEF Doc No. 161, primary contract; Dos Santos v STV Engrs., Inc., 8 AD3d 223 [2d Dept 2004). Having the ability to stop the work does not in and of itself equate to direction, supervision, and control (see id. § 8.2; Cicala v Stearns, Conrad & Schmidt Consulting Engrs., Inc., 10 Misc 3d 1066[A], 2005 NY Slip Op 52174[U], *7 [Sup Ct, Richmond County 2005]). Also, Douglas Elliman is listed with a "c/o" under "Owner" at the beginning of the contract for address [*4]purposes. This did not per se convert Douglas Elliman into the equivalent of the owner (see id. at 1). The EBT testimony of Kevin Williams, on behalf of DJM, was to the effect that he dealt with Brenda Ballison from Douglas Elliman. That does not establish that Douglas Elliman had the authority to direct, supervise, and control the work (see NYSCEF Doc No. 165, Williams EBT at 21-22). The EBT testimony of Lisa Moretti, from Douglas Elliman, does not establish that said company had authority to direct, supervise, and control the work that plaintiff engaged in. In fact, she testified that while Douglas Elliman would have reviewed the contract, "they would not have overseen the work going on" (NYSCEF Doc No. 163, Moretti EBT at 22). Douglas Elliman was not a statutory agent.
As to the argument of Mercer Corp. and Douglas Elliman that the ladder fell only a de minimis distance, the Court notes plaintiff's testimony that it fell ten feet (see NYSCEF Doc No. 162, plaintiff EBT at 27). Said defendants argue that plaintiff also testified that the ladder fell four feet, citing to his EBT testimony at page 91. It is clear that plaintiff testified that Gustavo (Sanchez) (in charge from NYI) was at the four-foot level — that Gustavo was at the same four-foot level as the other men. Gustavo being at four feet from the ground is not the same as a ladder falling ten feet.
Said defendants also argue that the ladder fell one foot, based on Woodhull Hospital's records: "Pt here for head and facial trauma which occurred 2 days ago when a ladder fell on his head, the height is about one feet high. . ." (NYSCEF Doc 106, Woodhull Hospital recs at 4). This statement cannot be considered inasmuch as the hospital records were not certified or otherwise authenticated to be admissible in evidence (see Graham v New York City Hous. Auth., 229 AD3d 605, 608 [2d Dept 2024]; Sherrod v Mount Sinai St. Luke's, 204 AD3d 1053, 1057 [2d Dept 2022]).
The record evidence is that the ladder fell ten feet. However, even if it fell four feet, that is not "miniscule," which is the adjective used to describe de minimis distances in cases cited by defendants Mercer Corp. and Douglas Elliman: Ienco v RFD Second Ave., LLC (41 AD3d 537, 539 [2d Dept 2007]) and Schreiner v Cremosa Cheese Corp. (202 AD2d 657 [2d Dept 1994]).
It is critical to apply the holding in Wilinski v 334 E. 92nd Hous. Dev. Fund Corp. (18 NY3d 1, 10 [2011]):
[W]e hold that plaintiff is not precluded from recovery under section 240 (1) simply because he and the pipes that struck him were on the same level. The pipes, which were metal and four inches in diameter, stood at approximately 10 feet and toppled over to fall at least four feet before striking plaintiff, who is five feet, eight inches tall. That height differential cannot be described as de minimis given the "amount of force [the pipes] w[ere] [ ]able [to] generat[e]" (id. at 605) over their descent. Thus, plaintiff suffered harm that "flow[ed] directly from the application of the force of gravity to the [pipes]" (id. at 604; see also Rocovich, 78 NY2d at 514). The Court reiterated that
"the dispositive inquiry framed by our cases does not depend upon the precise characterization of the device employed or upon whether the injury resulted from a fall, either of the worker or of an object upon the worker. Rather, the single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential. . . ." (Wilinski v 334 E. 92nd Hous. Dev. Fund Corp., 18 NY3d at 10, quoting Runner v New York Stock Exch., Inc., 13 NY3d at 603.)[[FN4]
]
Also instructive is the decision in Outar v City of New York (286 AD2d 671 [2d Dept 2001], affd 5 NY3d 731 [2005]), where the falling object was no higher than the worker's reach. The plaintiff, a track worker for NYC Transit, was injured while replacing track when an unsecured dolly which was used in his work and stored on top of a bench wall 5½ feet high fell and hit him. The Court of Appeals affirmed the Second Department's grant of a summary judgment motion, holding that "[t]he elevation differential between the dolly and plaintiff was sufficient to trigger Labor Law § 240 (1)'s protection, and the dolly was an object that required securing for the purposes of the undertaking" (286 AD2d at 672).
Considering that the ladder in the case at bar was at least 15 feet long and when extended was longer, that no safety device such as a hoist, rig, pulley or ropes was used, and that once lifted the ladder became a gravity-related risk, there is no material issue of fact regarding liability under Labor Law § 240 (1) based on the distance the ladder traveled as it fell downwards. It is noted that even an unsecured ladder initially leaning against a wall, i.e., one not being actively used, which falls on a worker, causing injures, has been held to constitute a gravity-related risk (see Vasquez v Gilbane Bldg. Corp., 224 AD3d 1232 [4th Dept 2024]).
Labor Law § 240 (1) is to be construed as liberally as may be for the accomplishment of the purpose for which it was framed (see Stoneham v Joseph Barsuk, Inc., 41 NY3d 217, 221 [2023]; Nicometi v Vineyards of Fredonia, LLC, 25 NY3d 90, 101 [2015]; Ross v Curtis-Palmer Hydro-Electric Co., 81 NY2d 494, 500 [1993]; Blake v Neighborhood Hous. Servs. of NY City, 1 NY3d 280, 292 [2003]; Koenig v Patrick Constr. Corp., 298 NY 313, 319 [1948]).
In the instant action, plaintiff established that Labor Law § 240 (1) was violated in that no safety devices were used to secure a minimum 15-foot ladder while it was being hoisted, that the falling ladder constituted a gravity-related risk, and that the Labor Law § 240 (1) violation proximately caused plaintiff's injuries. It is of no legal import that the ladder may have fallen only several feet. Defendant Mercer Corp., as the property owner, is liable pursuant to Labor Law § 240 (1) as a matter of law; it failed to establish the existence of triable issues of fact. Defendant Douglas Elliman, who established that it was not a statutory agent, is not liable pursuant to Labor Law § 240 (1) as a matter of law.
Motion Sequence No. 6:
Defendants/Third-Party Plaintiffs Douglas Elliman Property Management & Mercer Square Owners Corp.'s Motion for Summary Judgment Dismissing Plaintiff's Common Law Negligence and Labor Law § 200 Claim and Granting Them Judgment Over and Against Third-Party Defendant DJM Based on Contractual Indemnity
There are two branches to the summary judgment motion of defendants/third-party plaintiffs Douglas Elliman and Mercer Corp. (see NYSCEF Doc No. 145, notice of motion). The first branch seeks dismissal of plaintiff's common law negligence and Labor Law § 200 causes of action. In pertinent part, said section provides:
All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section. (Labor Law § 200 [1].)
Labor Law § 200 (1) codifies a "common-law duty imposed upon an owner or general contractor to maintain a safe construction site" (Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 352 [1998]). However, to recover under Labor Law § 200 (1), a plaintiff must show that an owner or general contractor had "the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition" (id. [emphasis omitted], quoting Russin v Louis N. Picciano & Son, 54 NY2d at 317). For example, in Comes v New York State Elec. & Gas Corp. (82 NY2d 876, 877 [1993]), it was held that the Appellate Division correctly dismissed a Labor Law § 200 (1) claim where "there [was] no evidence that defendant exercised supervisory control" over the moving of a steel beam.
If the challenged means and methods of the work are those of a subcontractor, and the owner or contractor exercises no supervisory control over the work, no liability attaches under Labor Law § 200 or the common law (see Sullivan v New York Athletic Club, 162 AD3d 955 [2d Dept 2018]; LaRosa v Internap Network Servs. Corp., 83 AD3d 905, 909 [2d Dept 2011]).
Moving defendants/third-party plaintiffs argue that DJM had a property manager assigned to oversee the project and such person would have been responsible for making sure that the sub-contractors performed their work in accordance with their contracts. DJM's property manager would typically have been present on site two to three times each week. Plaintiff testified that he never spoke to or saw anyone on site whom he identified as being from either Mercer Corp. or Douglas Elliman. Plaintiff had an NYI supervisor named Gustavo Sanchez and Mr. Sanchez is the only person who directed his work on this project. (See NYSCEF Doc No. 146, Drexler aff ¶¶ 19, 21.)
Plaintiff opposes this motion, arguing that there are triable issues of fact concerning whether the moving defendants/third-party plaintiffs exercised supervision and control over plaintiff's work (see NYSCEF Doc No. 187, Hoffman aff ¶ 6). This argument is premised on the primary contract's § 8.2 provision reserving to Mercer Corp. the right to stop all work (see NYSCEF Doc No. 161, primary contract § 8.2), discussed supra at 4).
Having the ability to stop the work does not equate to direction, supervision, and control. Therefore, it is insufficient to impose liability under common law negligence or Labor Law § 200 (see Gonzalez v Perkan Concrete Corp., 110 AD3d 955, 959 [2d Dept 2013; Austin v Consolidated Edison, Inc., 79 AD3d 682, 686 [2d Dept 2010]). The contractual provision cited by plaintiff did not constitute evidence of any supervision or control on the part of either Mercer Corp. or Douglas Elliman.
As set forth in Mercer Corp. and Douglas Elliman's surreply, it was DJM who assumed responsibility for the means and methods of the work it contracted to perform; it agreed to provide the labor, materials, tools, and equipment (see NYSCEF Doc No. 198, Drexler aff ¶ 5). The record evidence is that neither Mercer Corp. nor Douglas Ellison supervised or controlled plaintiff's work; it was Gustavo Sanchez from NYI (see NYSCEF Doc No. 147, plaintiff EBT at 15-16). DJM had a manager to oversee the project (see NYSCEF Doc No. 150, Williams EBT at 42).
Therefore, there are no issues of fact as to defendants Mercer Corp. and Douglas Elliman being liable for common law negligence or a Labor Law § 200 claim. As a matter of law, it is established that they are not liable under those causes of action.
The second branch of defendants/third-party plaintiffs Douglas Elliman and Mercer Corp.'s summary judgment motion seeks judgment over and against third-party defendant DJM based on contractual indemnity. The said defendants/third-party plaintiffs advert to the certificate of insurance procured by DJM. DJM is listed as the insured, and Douglas Elliman and Mercer Corp. are listed as additional insureds (in addition to others). (See NYSCEF Doc No. 153, insurance docs.)
Rider A of the contract between Mercer Corp. and DJM provided in pertinent part as follows with respect to insurance:
Sec. 17.5.1 Contractor shall secure, and keep in full force and effect, and shall cause its Subcontractors to secure, and keep in full force and effect, throughout the term of this Agreement, the coverage required by Article 17 at Contractor's sole cost and expense. Such [*5]insurance shall be primary, notwithstanding any other insurance that might be in effect for the Indemnitees.
. . .
Sec, 17.5.6 Owner, the Indemnitees and such additional parties (such as the Apartment Corp. (as hereinafter defined) . . . Owner may require . . . shall be named as additional insureds on the Commercial General Liability and Automobile Policies procured by Contractor and all subcontractors. (Id. at PDF 35-36.)
The same rider also provided in pertinent part with respect to indemnification:
§9.15.1 Delete Section 9.15.1 in its entirety and replace it with the following:
To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, the Apartment Corp. (as hereinafter defined), Architect, and the consultants, agents and employees of any of them (collectively, the "Indemnitees") from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Work, provided that such claim, damage loss or expense is attributable to bodily injury . . . but only to the extent caused by the negligent acts or omissions or willful misconduct of the Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. . . . The Contractor shall include in all subcontracts an indemnity similar to this Section 9.15.1 providing for each of the Subcontractors to indemnify Indemnitees with respect to liability arising in connection with its respective subcontract. (Id. at PDF 34.)
Kevin Williams, who testified at a deposition on behalf of DJM as its president, identified the contract in effect between Mercer Corp. and DJM (see NYSCEF Doc No. 150, Williams EBT at 24-28).
In opposition, DJM argues that defendants/third-party plaintiffs Douglas Elliman and Mercer Corp. are not entitled to contractual indemnification where negligence on the part of DJM or its subcontractors cannot be demonstrated. The issue of who was negligent has not yet been determined and, therefore, the issue of indemnification is premature, argues DJM.[FN5]
 (See NYSCEF Doc No. 171, Schwab aff at 6-10.)
"A court may render a conditional judgment on the issue of contractual indemnity, pending determination of the primary action so that the indemnitee may obtain the earliest possible determination as to the extent to which he or she may expect to be reimbursed" (Jardin v A Very Special Place, Inc., 138 AD3d 927, 930 [2d Dept 2016] [internal quotations marks and citation omitted]; see Golec v Dock Street Constr., Inc., 186 AD3d 463, 466 [2d Dept 2020]; Graziano v Source Bldrs. & Consultants, LLC, 175 [*6]AD3d 1253, 1260 [2d Dept 2019]).
In Hart v Commack Hotel, LLC (85 AD3d 1117 [2d Dept 2011]), the Appellate Division held that the plaintiff failed to establish entitlement to summary judgment on his Labor Law § 240 (1) claim because his own submission showed the existence of triable issues of fact as to whether adequate safety devices were provided. However, the owners established their prima facie entitlement to judgment as a matter of law by demonstrating that they did not have the authority to supervise or control the roofing work performed by the plaintiff's employer; the plaintiff failed to raise a triable issue of fact. Thus, the Supreme Court properly granted that branch of the owners' cross motion which was for summary judgment dismissing the causes of action alleging common-law negligence and a violation of Labor Law § 200.
The following portion of the decision in Hart is instructive in resolving this branch of defendants/third-party plaintiffs' motion:
However, the Supreme Court should have granted that branch of the owners' cross motion which was for summary judgment on their cause of action for conditional common-law indemnification. In order to establish a claim for common-law indemnification, a party must "prove not only that [it was] not negligent, but also that the proposed indemnitor . . . was responsible for negligence that contributed to the accident or, in the absence of any negligence, had the authority to direct, supervise, and control the work giving rise to the injury" (Benedetto v Carrera Realty Corp., 32 AD3d 874, 875 [2006]). Here, the owners were not negligent, and any liability on their part would be purely statutory and vicarious (id.; see Perri v Gilbert Johnson Enters., Ltd., 14 AD3d 681, 684-685 [2005]). The owners also demonstrated that Hart Roofing was hired to replace the roof at their hotel and it had the authority to direct, supervise, and control the means and methods of the roofing work. In opposition, Hart Roofing failed to raise a triable issue of fact. (Hart v Commack Hotel, LLC, 85 AD3d at 1118-1119; see Jardin v A Very Special Place, Inc., 138 AD3d at 931; Quilliams v Half Hollow School Dist. (Candlewood School), 67 AD3d 763 [2d Dept 2009].)
Similarly, in the case at bar, the Court has dismissed the Labor Law § 200 and common law negligence claims by plaintiff against moving defendants/third-party plaintiffs. As a result, at trial there will be no issue of negligence by these parties. While Mercer Corp. is liable under Labor Law § 240 (1) (and Douglas Elliman has no § 240 [1] liability), any liability on Mercer Corp.'s part would be purely statutory and vicarious. It is clear that in the instant case, common law negligence and Labor Law § 240 (1) liability would be assessed by the jury with respect to DJM, NYI, and plaintiff himself, and not Mercer Corp. and Douglas Elliman. Thus, Mercer Corp. and Douglas Elliman are entitled to conditional indemnification from DJM for any judgment against them arising out of or resulting from performance of the work proximately causing plaintiff's subject injuries, but only to the extent caused by the negligent acts or omissions or willful misconduct of DJM, a subcontractor to DJM, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, and only to the extent that the plaintiff obtains a recovery which exceeds the limits of the liability insurance coverage procured by DJM on behalf of Mercer Corp. and Douglas Elliman (see NYSCEF Doc No. 153, insurance docs at 34; Ramirez v Cablevision Systems Corp., 271 AD2d 424, 424 [2d Dept 2000]). DJM failed to show that there is a material issue of fact as to indemnification to that extent.
Motion Sequence No. 5:
Second Third-Party Defendant New York Insulation, Inc.'s Motion for Summary Judgment Dismissing the Second Third-Party Complaint by DJM Against It.
The final motion to determine was actually the initial one filed in this series of three motions. Second third-party defendant NYI moves for summary judgment dismissing the second third-party complaint in its entirety (see NYSCEF Doc No. 100, notice of motion).
Defendant/third-party defendant/second third-party plaintiff DJM interposed three causes of action against second third-party defendant NYI: common law indemnification and CPLR article 16 apportionment of responsibility; contractual indemnification; and breach of contract in failing to procure liability insurance naming DJM as an insured (see NYSCEF Doc No. 69, second third-party complaint).
In terms of contractual obligations, NYI asserts that the contract between DJM and it lacked provisions for indemnification and procurement of liability insurance:
20. Mr. Anthony Cardinale, President of NYI, identified the agreement dated September 6, 2018, Exhibit K hereto, as the contract entered into between his company NYI and DJM for work on the subject project. (Exh D at 30:2 — 32:4) He testified about the scope of work and terms of the agreement. (Exh D at 20:12-22 and 21:25 — 23:5) Mr. Cardinale confirmed this agreement was the only written contract entered into between DJM and NYI for work at the subject project as of the date of the accident. (Exh D at 67:4-14 and 100:5-14) A review of the plain language of the agreement unequivocally establishes that the agreement is devoid of any indemnity language or language requiring NYI to procure general liability insurance naming DJM or anyone else as an additional insured. (Exh K) Further, Mr. Cardinale was not aware of any requirement by DJM to have NYI name them as an additional insured on any insurance policies related to the subject project. (Exh D at 57:6-150[)]
21. Mr. Kevin Williams, President of DJM, testified on behalf DJM and confirmed that he signed the same 1-page agreement identified by Mr. Cardinale as the contract for work on the subject project. (Exh C at 53:8 — 54:11) Although he explained that generally his company also had their subcontractors execute a separate hold harmless agreement, Mr. William admitted that his company was not in possession of any such additional written agreement between NYI and DJI[[FN6]
] relating to the subject project. (Exh C at 54:8-18) Further, Mr. Williams did not have any discussions with NYI about generally liability insurance or any insurance procurement requirements. (Exh C at 104:3-11) (NYSCEF Doc No. 101, Scaria aff ¶¶ 20-21.)
DJM argues that material issues of fact remain as to its claims against NYI. With respect to the issue of a contract between DJM and NYI, DJM maintains that Mr. Cardinale identified a certificate of insurance dated October 12, 2018, wherein NYI is names as the insured and DJM as an additional insured. Mr. Williams testified that DJM typically supplies a one to two page simplified master contract that covers insurance topics and, as a standard practice, DJM would have requested insurance documentation from NYI naming DJM as an insured. The contract could not be located. (See NYSCEF Doc No. 127, Schwab aff ¶¶ 15-18.)
DJM also maintains that plaintiff might have sustained a grave injury in the form of "an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (Workers' Compensation Law § 11 [1]), which would entitle DJM to maintain its claim against NYI for indemnification and contribution, even if a written contract providing for such did not exist. DJM points to plaintiff's testimony concerning his loss of memory, his testimony that his physicians instructed him not to return to work due to dizzy spells, and Dr. Oribe, a treating doctor, having diagnosed plaintiff with post-concussion syndrome. (See NYSCEF Doc No. 127, Schwab aff ¶¶ 7-11.)
The right to contractual indemnification depends upon the specific language of the contract, and the promise to indemnify should not be found unless it can be clearly implied from the language and [*7]purpose of the entire agreement and the surrounding facts and circumstances (see Zong Wang Yang v City of New York, 207 AD3d 791, 796 [2d Dept 2022]; Shaughnessy v Huntington Hosp. Assn., 147 AD3d 994, 999-1000 [2d Dept 2017]). A provision in a construction contract cannot be interpreted as requiring the procurement of additional insured coverage unless such a requirement is expressly and specifically stated (see Meadowbrook Pointe Dev. Corp. v F&G Concrete & Brick Indus., Inc., 214 AD3d 965, 968-969 [2d Dept 2023]).
The one-page contract between DJM and NYI failed to specifically provide that NYI shall indemnify DJM. It is speculation that a separate agreement which provided for it existed. 
Similarly, the one-page contract does not mandate that NYI procure liability insurance naming DJM as an insured. "10 Million Dollars General Liability & Workers Compensation Insurance," listed under "Included in Proposal" in the one-page contract, is a statement "that merely requires the purchase of insurance[, but] will not be read as also requiring that a contracting party be named as an additional insured" (id. at 969). It is noted that a certificate of insurance is not evidence of the contents of an agreement (see School Constr. Consultants, Inc. v ARA Plumbing & Heating Corp., 63 AD3d 1029 [2d Dept 2009]). Thus, DJM's reliance on the submitted certificate of insurance (NYSCEF Doc No. 132) for its argument that there exists an issue of fact as to NYI's contractual indemnification obligations is to no avail (see NYSCEF Doc No. 127, Schwab aff ¶ 24).
In terms of common law indemnification, an employer may be held liable for contribution or indemnification only if the employee has sustained a "grave injury" within the meaning of Workers' Compensation Law § 11 (see Fleming v Graham, 10 NY3d 296, 299 [2008]; Velazquez-Guadalupe v Ideal Bldrs. & Constr. Servs., Inc., 216 AD3d 63, 72 [2d Dept 2023]). Grave injuries are those injuries that are listed in the statute and are determined to be permanent (Persaud v Bovis Lend Lease, Inc., 93 AD3d 831, 832 [2d Dept 2012]). One such enumerated injury is an "acquired injury to the brain caused by an external physical force resulting in permanent total disability" (Workers' Compensation Law § 11 [1]). A permanent total disability requires a showing that the injured employee is no longer employable in any capacity (see Grech v HRC Corp., 150 AD3d 829, 830 [2d Dept 2017]).
Dr. David Masur, a neuropsychologist who examined plaintiff on March 31, 2023, opined that "Mr. Macias' prognosis for performance of his optimal level of cognitive functioning is excellent, and from a cognitive point of view he would be able to engage in gainful employment" (NYSCEF Doc No. 123, Masur rpt at 6). This met the movant NYI's burden of proof on the issue it raised in its motion for summary judgment (see Purcell v Visiting Nurses Found., Inc., 127 AD3d 752 [1st Dept 2015]). This shifted to the burden to the nonmoving parties to establish an issue of fact. After reviewing all the medical records submitted with respect to this motion, the Court finds no expert medical opinion that plaintiff is no longer employable in any capacity. The brain diagnoses in the records do not ipso facto create an issue as to plaintiff's employability in some capacity (see Aramburu v Midtown W.B, LLC, 126 AD3d 498, 501 [1st Dept 2015]).
NYI has established prima facie that it was not obligated by contract to provide indemnification or procure liability insurance; also that plaintiff did not establish a grave injury, thus precluding common law indemnification. In the absence of any party showing that there exists a material issue of fact thereon, the second third-party complaint of DJM against NYI must be dismissed as those issues cover all the asserted causes of action.
Conclusion
It is hereby ORDERED as follows:
(1) Plaintiff's motion for summary judgment on its Labor Law § 240 (1) cause of action (Motion Sequence No. 7) is GRANTED to the extent it is asserted against Defendant Mercer Square Owners Corp. It is DENIED to the extent it is asserted against Defendant Douglas Elliman Property Management.
(2) That branch of defendants/third-party plaintiffs Mercer Square Owners Corp. and Douglas [*8]Elliman Property Management's motion for summary judgment seeking dismissal of plaintiff's common law negligence and Labor Law § 200 causes of action against them (Motion Sequence No. 6) is GRANTED.
(3) That branch of defendants/third-party plaintiffs Mercer Square Owners Corp. and Douglas Elliman Property Management's motion for summary judgment seeking judgment over and against third-party defendant DJM NYC, LLC based on contractual indemnity (Motion Sequence No. 6) is GRANTED to the extent of conditional indemnification from DJM NYC, LLC for any judgment against them arising out of or resulting from performance of the work proximately causing plaintiff's subject injuries, but only to the extent caused by the negligent acts or omissions or willful misconduct of DJM NYC, LLC, a subcontractor to DJM NYC, LLC, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, and only to the extent that the plaintiff obtains a recovery which exceeds the limits of the liability insurance coverage procured by DJM NYC, LLC on behalf of Mercer Square Owners Corp. and Douglas Elliman Property Management.
(4) Second third-party defendant New York Insulation, Inc.'s motion to dismiss DJM NYC, LLC's second third-party complaint (Motion Sequence No. 5) is GRANTED. The said second third-party complaint is dismissed and the Clerk shall enter judgment to that effect.
E N T E R
HON. AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).

Footnote 2:Another worker, Gustavo Sanchez, fell onto plaintiff along with the ladder.

Footnote 3:Per an order of October 14, 2020, the action was discontinued against defendants Mercer Square LLC, Madison Management LLC, and Philip Andrews LLC (see NYSCEF Doc No. 33, Oct. 14, 2020 order).

Footnote 4:In Wilinski, after rejected the de minimis argument, the court held that there still existed an issue of fact as to whether the plaintiff's injuries were the direct consequence of the defendants' failure to provide adequate protection against the risk (see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp., 18 NY3d at 10).

Footnote 5:Raymond Suarez, the resident manager, would have been responsible for overseeing the end-of-day cleanup — and presumably the storage of the ladder under the sidewalk bridge (see NYSCEF Doc No. 171, Schwab aff ¶¶ 33-34). However, Ms. Moretti testified that he should have, but probably did not have responsibility for overseeing the end-of-day cleanup (see NYSCEF Doc No. 175, Moretti EBT at 57). When asked if a resident manager at Douglas Elliman have had any role in making sure that a contractor's equipment or tools were put away or cleaned up, Ms. Moretti answered "Yes" to a question that referred specifically to "the resident areas"; and this question was posed as "not necessarily at 250 Mercer" (id. at 56). This should not be construed as evidence of Douglas Elliman having the authority to direct, supervise, and control the storage of the ladder under the sidewalk bridge on the pedestrian sidewalk outside the 250 Mercer Street worksite.

Footnote 6:Counsel erred in referring to DJI; it should state "DJM."